UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SIGMOND C. WILLIAMS,                           Case No. 1:05-cv-530

                    Plaintiff,                 Magistrate Judge Timothy S. Black

          vs.

JEFFERSON PILOT FINANCIAL
INSURANCE CO., *et al.*,
                                               **MEMORANDUM OPINION**
                    Defendants.                **AND ORDER**

          Plaintiff initiated this civil action on August 9, 2005 by filing a complaint against

Jefferson Pilot Financial Insurance Company and Canada Life Assurance Company

("Canada Life") pursuant to the Employee Income Retirement Security Act of 1974,

29 U.S.C. § 1001, *et seq*. ("ERISA").  Plaintiff is seeking to recover long-term disability

benefits.

          This case is now before the Court on the parties' cross-motions for judgment on

the administrative record (*see* Docs. 16 and 18), and the parties have consented to

disposition by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)

**BACKGROUND AND FACTS**

          Plaintiff was employed by Canada Life in October 1998 as Regional Director of

Agencies.  (Doc. 1, ¶ 9.)  As part of his employment, Plaintiff became enrolled in the

Canada Life Long Term Disability Plan ("the Plan").  (*See* Doc. 13, Notice of Filing of

the Administrative Record, PLAN 0001-0047.)

A.    *The Plan*

The Plan provides for disability benefits to participants who became totally

disabled.  The Plan defines "Total Disability" as follows:

> Totally Disabled and Total Disability mean during the Elimination Period
> and the next 24 months because of an Injury or Sickness You meet all of the
> following:
>
> (a)    You are unable to do the Material and Substantial Duties of Your
> Own Occupation; and
>
> (b)    You are receiving Appropriate Evaluation and Treatment from a
> Physician for that Injury or Sickness; and
>
> (c)    Your Work Earnings are less than 20% of Your Indexed
> Pre-Disability Monthly Earnings.

(PLAN 0013.)

The definition of disability changes 24 months after the end of the Elimination

Period, to wit:

> Totally Disabled and Total Disability mean because of an Injury or
> Sickness, all of the following are true:
>
> (a)    You are unable to do the Material and Substantial Duties of any
> occupation for which You are or may become reasonably qualified by
> education, training, or experience; and
>
> (b)    You are receiving Appropriate Evaluation and Treatment from a
> Physician for that Injury or Sickness; and
>
> c)    Your Work Earnings are less than 20% of Your Indexed
> Pre-Disability Monthly Earnings.

-2-

The Plan further provides that "[t]he Claims Administrator has the right to interpret the provisions of the Plan and its decision is binding" (see PLAN 0045), and the Plan states further that "Canada Life reserves the right to determine if Your Proof of Disability is satisfactory."  (PLAN 0035.)

The Plan also includes a "Rehabilitation Feature," which provides as follows:

A Rehabilitation Program means a program of vocational rehabilitation acceptable to Canada Life that will lead to returning to work for the Employer or another employer.

Our rehabilitation specialists will make recommendations regarding Your vocational ability with the co-operation of Your Physician and other appropriate specialists.  Canada Life will base the recommendation on *all* of the following:

(a)      the nature of Your condition; and
(b)      the expected length of Your Disability; and
(c)      Your education, training or experience; and
(d)      Your work potential based on vocational assessments; and
(e)      time and expense related to returning to work; and
(f)      other factors related to Your own situation.

If, at any time, You decline to participate or cooperate in a rehabilitation evaluation/assessment or plan that Canada Life feels is appropriate and approved by Your Physician, we will cease paying Monthly Income Benefits.

If the Rehabilitation Program is not developed by Us, You must receive written approval from Canada Life before You start the program.

(PLAN 0032-33.)

-3-

B.    *Plaintiff's Claim Through 2003*

On or about October 13, 2000, Plaintiff submitted a claim for benefits under the Plan.  (AR 0562.)  The Attending Physician's Statement on the claim form was signed by Dr. Martin Popp who diagnosed Plaintiff with colon cancer and indicated that Plaintiff had become disabled on September 13, 2000.  (AR 0562.)  Thereafter, Plaintiff's claim was approved, and Canada Life began paying benefits under the Plan.

Plaintiff continued to receive benefits through 2003, although there was no evidence of recurrent cancer.  Tests in 2002 and 2003 failed to reveal any evidence of ongoing carcinoma.  Nonetheless, in a September 2003 report, Dr. Popp concluded that Plaintiff's disability should be extended due to continued problems with rectal drainage and neuropathy in his leg.  (AR 5-6.)  Dr. Popp also noted that Plaintiff had "underwent a long and difficult course of treatment for rectal carcinoma," and that he was treated with radiation, multiple surgeries, and received a permanent colostomy.  *Id.*

Nevertheless, despite his condition, Plaintiff wanted to find a way to work from home.  Accordingly, in July 2003, Plaintiff wrote to Canada Life enclosing a claimant's statement and requesting that they work together to design a rehabilitation plan for his return to work.  (AR 0540.)  Subsequently, Plaintiff sent an email to Jeff Seeman of Canada Life noting that Plaintiff's repeated efforts to devise a rehabilitation plan had been ignored.  In response, Canada Life stated the consideration of Plaintiff's request would depend upon an update from Dr. Popp.  (AR 10.)

Dr. Popp had previously written to Canada Life to clarify Plaintiff's then-current

-4-

disability status.  As noted above, in September 2003, Dr. Popp had indicated that Plaintiff's disability should be extended at that time.  (AR 0005.)  Although Dr. Popp noted that Plaintiff had done reasonably well following surgery, which surgery had attempted to reconnect his colon, Dr. Popp indicated that Plaintiff had continuing problems with drainage of stool and material from his rectum.  Dr. Popp further noted while "we should be trying to rehabilitate him and get him back to full-time employment," Plaintiff "was still having too much trouble to return to full-time employment" and would benefit from six months more of rehabilitation.  (AR 0006.)

No specifics about the nature of the rehabilitation were discussed.  Frustrated by Canada Life's inaction, Plaintiff sent an email to Canada life noting his decision " that Rehabilitation is something I will conduct on my own, whether it is approved or not." (AR 56.)  Thereafter, on September 11, 2003, Plaintiff paid $15,000.00 for a license from AccuTax, a work-at-home franchise.

In response, Canada Life asked Plaintiff for more details about his plan.  Plaintiff submitted a draft "Proposed Rehabilitation Plan," indicating that he had already begun Accutax training, and that he could be fully engaged by March 1, 2004.  Although Canada Life's Rehabilitation Specialist never met with Plaintiff, and did not work with Plaintiff's physician or other appropriate specialists as required by the Plan (see PLAN 0032), on October 16, 2003, Canada Life advised Plaintiff that it had accepted his retraining proposal as a Rehabilitation Plan.  (AR 408.)

Canada Life offered a lump sum payment of $36,500.00, an amount based on "the

funds necessary to cover the training, licensure and set up as an AccuTax Advisor, and the monthly benefits you would receive from present to March 1, 2004, when your training will be completed and fall aspects of your business are fully operational." *Id*. Canada Life conditioned its approval on the signing of a Settlement Agreement it provided to Plaintiff with the advice that he discuss the proposal with his "legal or financial advisor." *Id*.

Thereafter, on November 10, 2003, Plaintiff wrote to Canada Life and inquired as follows:

> By accepting the Settlement offer, am I precluding any future benefits if a recurrent condition of cancer is found within 6 months of termination? As I understand my current benefits, if a recurrent condition is found within 6 months of the end of my benefits, the benefits would recommence. I ask this question because I am currently undergoing re-evaluation to determine the source of a problem that could be a cancer-based.

(AR 0036.)

That same day, Canada Life emailed Plaintiff to advise that it "would agree to a settlement that takes effect 2/28/04, even though it would be signed now. When his claim ends, so does his LTD coverage." (AR 0034.) Canada Life's email further added that if Plaintiff "has a recurrence of his cancer on or before that date, and that recurrence caused him to be disabled as defined by the plan, his claim would simply remain open for as long as his disability lasts. However, should he have a recurrence after 2/28/04, he would not be covered by the LTD plan." (AR 34.) Plaintiff responded, via email, that he was prepared to sign the document. *Id*.

Plaintiff signed the Settlement Agreement on November 12, 2003.  ( AR 0537-38.)
The Settlement Agreement stated that it "is intended to settle and terminate all
obligations, disputes and differences that do or may exist between Canada Life and
Sidmond Williams respecting the Claim (defined below)."  (AR 0537.)  Plaintiff agreed to
"release, discharge and hold harmless Canada Life of any and all such claims, demands,
sums of money, actions, rights, causes of action and/or liabilities with respect to such
amounts."  (AR 0537.)

More specifically, the Settlement Agreement further provided that:

> The settlement will take effect 3/1/04.  As of that date, the claim ends, as
> does the coverage under the Long-Term Disability policy.  If Sidmond
> Williams has a reoccurrence of his medical condition that caused the claim,
> on or before that date, and that reoccurrence causes him to be disabled as
> defined in the policy, his claim would simply remain open for as long as his
> disability lasts, subject to all the terms of the policy.  However, should he
> have a reoccurrence after 3/1/04, he would not be covered by the policy.
> (AR 0538.)

On November 14, 2003, Canada Life sent a check for $36,500.00 to Plaintiff.  (AR
0535.)

C.    *Plaintiff's Continuing Disability and Denial of Benefits*

In January 2004, Plaintiff was examined by his neurologist, Dr. Marvin Rorick.
Dr. Rorick noted chronic right lower extremity weakness, significant atrophy of the leg
muscles, reduced or inactive reflexes at the ankle, and foot drop.  (AR 453-54.)  There is
no mention of any neurological improvement.  Dr. Rorick continued Williams on
Neurontin, plus Percocet for pain management.

A PET scan on February 19, 2004 revealed a new metabolism indicative of restaging cancer in the presacral space. (AR 211.) On February 24, 2004, Dr. James Essell wrote that the recent findings "are a strong possibility for recurrent rectal carcinoma." (AR 231.) However, he further opined that because of the previous radiation and surgery, "a biopsy to definitely prove recurrence is not possible at this time." (*Id.*)

On February 26, 2004, Plaintiff wrote to Canada Life advising that "what seems very apparent is that the cancer that first caused my disability is still present. For my security and well-being, I need to have Canada Life recognize and confirm that because of the February 28, 2004 deadline in my Settlement Agreement." (AR 0511.) Canada Life responded to Plaintiff that day indicating that it would "not be issuing any Long Term Disability until we can clarify the medical condition." (AR 0512.)

On March 5, 2004, Dr. Essell wrote to Canada Life stating: "I believe that Mr. Williams is unable to work at this time due to severe neuropathy that is a result of his previous chemotherapy treatments." (AR 0465.)

Plaintiff followed up with Dr. Popp on April 2, 2004 (AR 0441), and on April 19, 2004, Dr. Popp wrote to Canada Life reporting that Plaintiff "currently is passing large quantities of a clear mucoid material through his rectum that requires him to wear a diaper and change 3-4 times a day." (AR 0445.) Dr. Popp further indicated that there "is also a significant possibility that he has recurrent cancer in the rectosigmoid area" and further noted that a "CT-guided core needle biopsy of the area … only revealed dense fibrous

soft tissue.  It is therefore unclear at this point whether Mr. Williams does or does not have recurrent cancer."  (AR 0446)  Dr. Popp concluded that "[b]ased on the above clinical course, I feel that Mr. Williams should currently continue to be 100% disabled.  The rectal drainage would largely prohibit most meaningful employment."  (AR 0446.)

At the request of Canada Life, Nurse N. Bruemmer reviewed the file on June 15, 2004.  (AR 0436.)  Nurse Bruemmer summarized the medical records received and concluded that the "[m]edical findings indicated chronic conditions, which are managed medically, and have not had a significant change.  No recurrent CA has been identified, despite extensive testing.  Activity restrictions are not apparent.  It is not reasonable to consider the perineal care (3-4 times a day diaper changes and wipes) as a significant hindrance to the ability to function in a normal workday at home."  (AR 0436.)

On June 29, 2004, Canada Life wrote to Plaintiff advising that it would not reopen his disability claim because he had not "proven a condition that would prevent you from performing the occupations for which a Rehabilitation Settlement was approved."  (AR 0386.)  Canada Life summarized the recent medical evidence and concluded "we do not have any documentation that supports a recurrence of cancer and there does not seem to be any change in your condition that would prevent you from performing your home-based business."  (AR 0386.)  Canada Life advised Plaintiff of his appeal rights under ERISA.  (AR 0388.)

After Plaintiff appealed the denial of his request to reopen his claim, Canada Life

wrote to him on March 28, 2005 advising that his file would be sent to an independent physician for a file review.  (AR 0339.)  Canada Life subsequently received a report dated March 29, 2005 that stated, based upon the review by a board-certified hematologist and oncologist, that a "PET on 2/19/04 revealed new activity in the rectosignoid area, but biopsies were negative; thus, it has not been proven that he has rectal cancer recurrence."

On March 30, 2005, the claims administrator wrote to Plaintiff advising that the decision to deny reopening the claim was upheld on appeal.  (AR 0323.)  The claims administrator concluded that the "medical records do not indicate that you had a reoccurrence of your cancer as of 3/1/04.  Even if you did, such reoccurrence must be disabling.  We have determined that even if the cancer had returned, it would not be disabling as you had a home business and had been dealing with these complications for some time."  (AR 0324.)  The claims administrator also advised Plaintiff of his right to "pursue your second and final level of appeal to the Appeals Council."  (AR 0324.)

On May 19, 2005, Plaintiff submitted his appeal to the Appeals Council.  (AR 0315.)  Plaintiff enclosed a decision from the Social Security Administration granting benefits under the Act.  (AR 0321-22.)  However, on June 20, 2005, the Appeals Council wrote to Plaintiff to advise that it had upheld the denial of Plaintiff's claim for additional benefits.  (AR 0276.)

On or about August 9, 2005, Plaintiff initiated the instant action in this Court. Plaintiff set forth claims for wrongful denial of benefits under ERISA, for breach of

contract under state law, for rescission under state law, for deprivation of property without due process, and for bad faith under state law.[1]

For the reasons that follow, the undersigned finds that Plaintiff's motion to reverse the administrative decision is well-taken.

## II.

ERISA governs certain employee benefits plans, such as health insurance plans, pension plans, and disability benefits plans, and ERISA provides a right of action for covered employees to recover said benefits when such have been wrongfully denied. *Bledsoe v. Emery Worldwide Airlines*, 258 F.Supp.2d 780, 797 (S.D. Ohio 2003) (citing 29 U.S.C. § 1132(a)(1)(B)).

ERISA preempts state law claims that "relate to" any employee benefit plan. 29 U.S.C. § 1144(a) (1988). A law "relates to" an employee welfare plan if it has "a connection with or reference to such a plan." *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990) (quoting *Shaw v. Delta Air Lines*, 463 U.S. 85, 96-97 (1983)).

In the present case, the Settlement Agreement between Canada Life and Plaintiff relates to rights enumerated in and defined by ERISA. Moreover, Plaintiff is seeking reinstatement of benefits under the Policy. Thus, Plaintiff's claim for reinstatement of benefits will be reviewed pursuant to the regulations of ERISA.

When reviewing a denial of benefits under a ERISA, a court's consideration of an

---

[1] Plaintiff's state law claims, with the exception of the one for rescission, were dismissed on September 11, 2006. (*See* Docs. 15, 20.)

administrator's decision is limited to a review of that determination solely in light of the evidence that was available to the administration at the time the decision was made. *Wilkins v. Baptist Healthcare, Inc*., 150 F.3d 609, 619 (6th Cir. 1998).  Moreover, the court reviews *de novo* a denial of benefits under an ERISA plan "unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *University Hosps. v. Emerson Elec. Co.,* 202 F.3d 839, 845 (6th Cir. 2000).  If an administrator has such discretionary authority, the court reviews the denial of benefits under the arbitrary and capricious standard.  *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111 (1989); *University Hosps.,* 202 F.3d at 845.

Here, the undersigned finds that the arbitrary and capricious standard applies in the present case because the long term disability insurance policy at issue gives Canada Life discretionary authority.  (*See* AR 35, 45)  "When a plan administrator has discretionary authority to determine benefits, [the Court] will review a decision to deny benefits under 'the highly deferential arbitrary and capricious standard of review.'"  *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 595 (6th Cir. 2001) (quoting *Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 380 (6th Cir. 1996)).

However, as noted by the Sixth Circuit, merely because the review is deferential does not mean that it is inconsequential.  *Moon v. UNUM Provident Corp.,* 405 F.3d 373, 379 (6th Cir. 2005).  The appeals court explained as follows:

> While a benefits plan may vest discretion in the plan administrator, the federal courts do not sit in review of the administrator's decisions only for

> the purpose of rubber-stamping those decisions. As we observed recently, "[t]he arbitrary-and-capricious ... standard does not require us merely to rubber stamp the administrator's decision." *Jones v. Metropolitan Life Ins. Co.,* 385 F.3d 654, 661 (6th Cir. 2004) (citing *McDonald v. Western-Southern Life Ins. Co.,* 347 F.3d 161, 172 (6th Cir. 2003)). Indeed, "[d]eferential review is not no review, and deference need not be abject." *McDonald,* 347 F.3d at 172. Our task at all events is to "review the quantity and quality of the medical evidence and the opinions on both sides of the issues." *Id.*

*Moon,* 405 F.3d at 379.

The decision is not arbitrary or capricious only if the administrative record supports a "reasoned explanation" for the termination of benefits. *See Williams v. International Paper Co.,* 227 F.3d 706, 712 (6th Cir. 2000) (cited in *Moon,* 2005 WL 664330, at *5). That is, the decision of the administrator is upheld if it is the result of a deliberate principled reasoning process, if it is supported by substantial evidence, and if it is based upon a reasonable interpretation of the plan. *Glenn v. MetLife*, *et al.*, --- F.3d ----, 2006 WL 2519293 *5 (6th Cir. Sept. 1, 2006)(quoting *Baker v. United Mine Workers of America Health and Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir.1991)).

On the other hand, indications of arbitrary and capricious decisions include a lack of substantial evidence, a mistake of law, bad faith, and a conflict of interest by the decision-maker. *Caldwell v. Life Insurance Co. of North America*, 287 F.3d 1276, 1282 (10th Cir.2002). Also, a decision based upon a selective review of the record or an incomplete record is arbitrary and capricious. *Moon,* 405 F.3d at 381..

Here, in the instant case, Canada Life is authorized both to decide whether an

-13-

employee is eligible for benefits and to pay those benefits.  This dual function creates an apparent conflict of interest.  *Glenn v. MetLife*, *et al.*, 2006 WL 2519293 at * 5 (citing *Darland v. Fortis Benefits Ins. Co.*, 317 F.3d 516, 527 (6th Cir. 2003), overruled on other grounds by *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003)).

Additionally, courts have recognized that a disability determination by the Social Security Administration is relevant in an action to determine the arbitrariness of a decision to terminate benefits under an ERISA plan.  *Glenn v. MetLife*, *et al.*, 2006 WL 2519293 at *5; *see also Calvert v. Firstar Finance*, Inc., 409 F.3d 286m 295 (6th Cir. 2005) (an ERISA plan administrator's failure to address the Social Security Administration's finding that the claimant was "totally disabled" is yet another factor that can render the denial of further long-term disability benefits arbitrary and capricious). Here, Canada Life's termination letters did not address Plaintiff's Social Security disability determination.

### III.

Pursuant to the Settlement Agreement, Plaintiff is entitled to continued benefits if there is a "reoccurrence of his medical condition that caused the claim . . . and that reoccurrence causes him to be disabled as defined by the policy." (AR 167.)  In order to be disabled under the Plan, Plaintiff must be "unable to do the Material and Substantial Duties of any occupation for which [he is] or may become reasonably qualified by education training or experience." (PLAN 0013.)

Plaintiff contends that (1) the credible medical evidence establish beyond dispute that plaintiff is disabled as defined by the Plan; and (2) the Plan administrator acted in an arbitrary and capricious manner by finding otherwise.

### *A.*

As noted above, in June 2004, Canada Life informed Plaintiff that his claim would not be reopened because he had not proven a condition that would prevent him from performing the occupations for which a Rehabilitation Settlement was approved.  The letter further indicated that Canada Life does "not have any documentation that supports a recurrence of cancer and there does not seem to be any change in your condition that would prevent you from performing your home based business." (AR 0386).

In support of this conclusion, Canada Life further noted, *inter alia*; that: (1) Plaintiff was only seen for four office visits from 9/4/03 through the present, plus one evaluation by Plaintiff's urologist, Dr. Jeffrey Zipkin; (2) the medical findings indicated

that Plaintiff's chronic conditions are well maintained medically; (3) there has not been a

significant change in any of these conditions; (4) extensive testing revealed no recurrent

cancer; (5) Dr. Rorick indicated that there has not been a change in Plaintiff's condition

that would prohibit him from working; and (6) the information from Dr. Popp indicated

that the CT guided biopsy on the PET scan was negative for recurrent cancer. *Id.*

Plaintiff maintains that Canada Life inaccurately recited the medical evidence of

record, and that its conclusion was "based upon selective portions of what was itself a

selective review of the medical evidence by a nurse retained by Canada Life." (Doc. 16

at p. 13.) *See Moon,* 405 F.3d at 381 (a decision based upon a selective review of the

record or an incomplete record is arbitrary and capricious.)

The undersigned agrees.

Contrary to Canada's Life' assertion, Plaintiff was seen at least six times during

that period (plus once by Dr. Zipkin), including twice by Dr. Popp (AR 202-03, 223),

twice by Dr. Rorick (AR 451-54), once by Dr. Perme for the PET scan (AR 211), and at

least once, if not more, by his oncologist, Dr. Essell (AR 143-44, 231). Five of those

visits were between January and April of 2004.

Moreover, there is no credible medical evidence or records classifying Plaintiff's

conditions as "well maintained," medically or otherwise. Dr. Essell found that Plaintiff

was unable to work because of "severe neuropathy" from the chemotherapy. (AR 229.)

Dr. Popp detailed the multiple disabling conditions. Moreover, medication for the

neuropathy alone "causes weakness, lethargy and inability to concentrate." (AR 210.)

The rectal drainage requires him to wear a diaper, which must be changed 3-4 times a

day, plus multiple trips to the bathroom to maintain hygiene. (AR 209.)

Furthermore, in April 2004, Dr. Popp noted that "over the past 1½ years, Mr.

Williams continued to have significant problems resulting from these operations along

with extensive medical care." (AR 209.) Dr. Popp found the results of the guided biopsy

to be inconclusive, stating "it is unclear at this point whether Mr. Williams does or does

not have recurrent cancer." (AR 210.) Dr. Essell also noted that the PET scan indicated a

"strong possibility for recurrent rectal cancer." (AR 231.) Dr. Rorick noted that

Williams "may require further treatment for possible recurrence of his rectal carcinoma."

(AR 452.) Drs. Popp and Essell concluded that the only workable option was to "allow

the disease to declare itself with further activity if it exists." (AR 210.)

With respect to Dr. Rorick, Canada Life mischaracterizes his conclusions.

As noted by Plaintiff, the precise question posed to Dr. Rorick was: "Has there been a

recent change in condition which now prohibits Mr. Williams from working out of his

home?" (AR 450.) Dr. Rorick's simple answer of "No" to this question merely means

that there was no "recent change in condition" contributing to a disability, not that there

was no disability. Moreover, as noted above, Dr. Rorick specifically noted that "it would

appear that [Plaintiff] may require further treatment for possible recurrence of his rectal

carcinoma." (AR 452.)

Here, Plaintiff's treating physicians explicitly declared him to disabled in 2002, 2003 and 2004. (AR 236-37, 262-64, 266-67, 503-04.). Accordingly, the undersigned agrees that the credible medical evidence establishes beyond dispute that Plaintiff is disabled as defined by the Plan and/or pursuant to the Settlement Agreement.

*B.*

Furthermore, Canada Life's decision to deny benefits based upon an alleged lack of objective medical evidence of recurrent cancer is not is "based upon a reasonable interpretation of the plan," and, therefore, it cannot be upheld. *See Glenn v. MetLife*, *et al.*, --- F.3d ----, 2006 WL 2519293 *5 (6th Cir. Sept. 1, 2006) (quoting *Baker v. United Mine Workers of America Health and Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir.1991)).

Here, the explicit terms of the Settlement Agreement do not require objective medical evidence of recurrent cancer in order to reopen Plaintiff's claims. Instead, as noted above, the Agreement requires "a reoccurrence of his medical condition that caused the claim."

The word "reoccurrence" is not a defined term in the Settlement Agreement nor the Plan. However, the Plan does contain a provision for "Recurrent Disability," which is defined as "a Disability which has the same cause as the original Disability and begins after you have returned to work for less than 6 months." (PLAN 13.)

As noted by Plaintiff, his disability had never been caused by cancer *per se,* but by

the consequences of his cancer treatment — polyneuropathy, rectal drainage, and a host of other ailments resulting from chemotherapy and surgery, including the debilitating effects of medication. Notably, the record indicates that Plaintiff was cancer free in 2002 and 2003, and yet he nonetheless received benefits without dispute. Thus, prior to the execution of the Settlement Agreement, Canada Life continued to certify Plaintiff's disability, thereby paying benefits in the absence of diagnosed cancer.

Plaintiff's disabling condition remains supported by the objective evidence of record. Accordingly, taking into account the existence of a conflict of interest, Canada Life's failure to consider Plaintiff's Social Security award, and the objective findings and medical evidence as a whole, this Court concludes that the Canada Life's decision to "deny long-term benefits in this case was not the product of a principled and deliberative reasoning process." *See Glenn*, 2006 WL 2519293 at *12.

## VI.

The administrative record does not support a "reasoned explanation" for the termination of benefits. Canada Life's decision declining to reopen Plaintiff's claim for disability benefits was arbitrary and capricious. Accordingly, it is therefore **ORDERED** that Plaintiff's motion to reverse the administrative record (doc. 16) is **GRANTED**; and Defendant's cross-motion for judgment (doc. 18) is **DENIED**.

Plaintiff is entitled to reinstatement of long-term disability benefits. Plaintiff shall submit an itemized statement of the amount of disability payments due him and a

proposed judgment entry within **thirty (30) days** of the entry of this Order, and thereafter the parties shall timely file responsive memoranda pursuant to S.D Ohio Civ. R. 7.2.

Plaintiff is also entitled to recovery of attorney fees and costs. Plaintiff shall submit an itemized and verified statement of attorney fees and costs and a proposed judgment entry within **thirty (30) days** of the entry of this Order, and thereafter the parties shall timely file responsive memoranda pursuant to S.D Ohio Civ. R. 7.2.

**IT IS SO ORDERED.**

Date:<u>September 19, 2007</u>                    <u> s/Timothy S. Black         </u>
                                                  Timothy S. Black
                                                  United States Magistrate Judge

-20-